NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1029
_____

UNITED STATES OF AMERICA; STATE OF CALIFORNIA;
STATE OF DELAWARE; STATE OF FLORIDA; STATE OF GEORGIA;
STATE OF HAWAII; STATE OF ILLINOIS; STATE OF INDIANA;
STATE OF LOUISIANA; COMMONWEALTH OF MASSACHUSETTS;
STATE OF MICHIGAN; STATE OF MONTANA; STATE OF NEVADA;
STATE OF NEW HAMPSHIRE; STATE OF NEW MEXICO; STATE OF NEW
YORK; STATE OF OKLAHOMA; STATE OF RHODE ISLAND;
STATE OF TENNESSEE; STATE OF TEXAS; COMMONWEALTH OF VIRGINIA;
STATE OF WISCONSIN; DISTRICT OF COLUMBIA; EX REL. DAVID MORGAN

v.

EXPRESS SCRIPTS, INC; CVS CAREMARK CORPORATION;
MEDCO HEALTH SOLUTIONS, INC; FIRST DATABANK INC;
*CLINICAL DRUG INFORMATION LLC; MCKESSON CORPORATION;
CARDINAL HEALTH, INC.; AMERISOURCEBERGEN CORPORATION;
JOHN DOE CORPORATIONS 1-20

David Morgan,

Appellant

* Amended as per the Clerk's 02/19/14 Order
_____

Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-05-cv-01714)
District Judge: Honorable Dennis M. Cavanaugh
_____

Argued November 21, 2014

Before: AMBRO, SCRICA and ROTH, <u>Circuit Judges</u>

(Opinion filed February 20, 2015)

William L. Hurlock, Esq.
Mueller Law
363 Bloomfield Avenue
Suite 2C
Montclair, NJ 07042

Robert A. Magnanini, Esquire     **(Argued)**
David S. Stone, Esq
Stone & Magnanini
150 John F. Kennedy Parkway
4th Floor
Short Hill, NJ 07078

       Counsel for Appellant


Enu Mainigi, Esq.                **(Argued)**
Kannon K. Shanmugam, Esq.
Craig D. Singer, Esq.
Jennifer G. Wicht, Esq.
Williams & Connolly
725 12th Street, N.W.
Washington, DC 20005

       Counsel for Appellees Express Scripts, Inc. and
       Medco Health Solutions, Inc.


Jonathan R. Donnellan, Esq.      **(Argued)**
Eva M. Saketkoo, Esq.
Hearst Corporation
300 West 57th Street
New York, NY 10019

       Counsel for Appellee First Databank, Inc.


Allyson N. Ho, Esq
Morgan, Lewis & Bockius
1717 Main Street
Suite 3200

Dallas, TX 75201

Meredith S. Auten, Esq.
Marie E. Donovan, Esq.
John P. Lavelle, Jr., Esq.
Jane M. Manchisi, Esq.
Eric W. Sitarchuk, Esq.          **(Argued)**
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

        Counsel for Appellee Americourcebergen


John A. Boyle, Esq.
Kevin H. Marino, Esq.          **(Argued)**
Marino, Tortorella & Boyle
437 Southern Bulevard
Chatham, NJ 07928

        Counsel for Appellee CVS Caremark Corp


Matt D. Basil, Esq.
Craig C. Martin, Esq.          **(Argued)**
Jenner & Block
353 North Clark Street
Chicago, IL 60654

        Counsel for Appellee Clinical Drug Information LLC

———————

OPINION[*]

———————

ROTH, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

David Morgan, proceeding as a *qui tam* relator, appeals the District Court's dismissal of his claims under the False Claims Act[1] and corresponding state laws. The District Court dismissed the claims, under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction since they were based on publicly disclosed allegations whose "original source" was not Morgan. We will affirm.[2]

Morgan was not the "original source" of his allegations that various pharmaceutical industry defendants profited from artificially inflated Average Wholesale Prices (AWPs) for brand-name drugs, as he had no "direct and independent knowledge of the information on which the allegations are based."[3] In fact, Morgan was further removed from the alleged unlawful conduct than the relator in *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*,[4] who was the vice president of a purported co-conspirator.

Morgan was never employed by any of the entities that allegedly profited from the conspiracy. Morgan is a pharmacist who says he discovered the widespread price inflation of brand-name drugs "[t]hrough his diligence," which amounted to an eyeball comparison of two publicly available price listings. After noticing the pricing discrepancy, Morgan says he became aware, while conducting an audit, of communications between wholesaler First Databank, Inc., and price listing publisher

---

[1] 31 U.S.C. § 3729 *et seq.*

[2] We have jurisdiction to consider Morgan's appeal under 28 U.S.C. § 1291.

[3] 31 U.S.C. § 3730(e)(4)(B) (2006) (amended 2010, without retroactive effect); *see* 31 U.S.C. § 3730(e)(4)(A) (divesting federal courts of jurisdiction over FCA claims based on publicly disclosed allegations "unless . . . the person bringing the action is an original source of the information").

[4] 769 F.3d 837, 842 (3d Cir. 2014).

AmerisourceBergen Corp., which indicated that First Databank knew of the price differential. As the District Court correctly pointed out, Morgan's Third Amended Complaint "does not demonstrate that Morgan had any direct knowledge of any alleged wrongdoing" as to the myriad other defendants.

We held in *Schumann* that "knowledge of a scheme is not direct when it is gained by reviewing files."[5] Yet that was the full extent of Morgan's "diligence." Moreover, Morgan's knowledge of the pharmaceutical industry does not make him an original source.[6] Albeit informed by his years of experience, Morgan's assessment of publicly available information and allegedly conspiratorial communications to which Morgan was not a party is not sufficient to demonstrate the "direct and independent knowledge" required under the FCA's original source exception.[7]

The District Court lacked subject matter jurisdiction because Morgan's allegations were "based upon the public disclosure of allegations" in the news media, other civil proceedings, and a Congressional report.[8] Applying our "twofold analysis," we first note that the allegations that pharmacy benefit managers, including Express Scripts, Inc., and MedCo Health Solutions, Inc., profited from inflated AWPs and secret spread pricing

---

[5] *Id.* at 847.
[6] *See id.* (quoting *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 240 (3d Cir. 2013)).
[7] *See* 31 U.S.C. § 3730(e)(4)(B).
[8] *See* 31 U.S.C. § 3730(e)(4)(A).

"was disclosed via [multiple] sources listed in § 3730(e)(4)(A)."[9]  Second, we may

deduce that Morgan's allegations are "based on" the public disclosures predating his

complaint even without resort to algebraic representation,[10] because Morgan forwarded

one such news article to a colleague with the caption, "Gotta love this!!"  While public

disclosures "need only be 'supported by' or 'substantially similar to' the disclosed

allegations" to bar suit under the FCA,[11] here Morgan demonstrated actual familiarity

with disclosures that describe substantially the same price-related misconduct identified

in the complaint.

Morgan's central allegation—that the pharmacy benefit manager defendants knew

First Databank fraudulently inflated their profits but nonetheless chose First Databank as

their exclusive pricing source—also echoes allegations from previously filed lawsuits,

---

[9] *See United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 519 (3d Cir. 2007).  News media disclosures included a March 31, 2003, *Wall Street Journal* article entitled "Pharmacy-Benefit Firms Profit on Generic Drugs," that paraphrased a pharmaceutical benefit manager pricing expert's observation, "it's an open secret in the industry that AWPs often are severely inflated" and that "industry veterans joke that AWP ought to stand for 'Ain't What's Paid.'"  J.A. at 568-72.  The *Journal* article also noted that pharmacy benefit firms were "trying to take advantage of the 'spread' between pharmacy prices and what corporate and government clients pay.  Express Scripts says most of its contracts now include spread pricing."  J.A. at 570. *See also, e.g.*, William Sherman, *Rx Ripoffs Hard to Swallow:  State Probing Drug Pricing and Sales Tactics*, N.Y. Daily News (July 27, 2003), J.A. at 1030-34; *Pharmacy Benefit Managers Charged with Inflating*, PR Newswire (Mar. 18, 2003), J.A. at 1036-40.

[10] *See United States ex rel. Dunleavy v. Cnty. of Del.*, 123 F.3d 734, 741 (3d Cir. 1997) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)).

[11] *Atkinson*, 473 F.3d at 519.

including one where Morgan served as a paid expert.[12]  The mere fact that Morgan

quantified the AWP differential does not remove his allegations from the public

disclosure realm.  Morgan's 4.16% differential simply indicates an AWP based on a 25%

markup over wholesale acquisition cost, a markup disclosed in a Congressional report

predating Morgan's complaint.[13]  The report's disclosure of a specific, industry-wide

markup shift provided Morgan with all the "essential elements" needed to arrive at a

4.16% price differential.[14]  Since Morgan was not the original source of the allegations

contained in his complaint, the public disclosure bar precludes his FCA claims.

　　　　For the foregoing reasons, we will affirm the District Court's order granting the

defendants' motion to dismiss Morgan's FCA and corresponding state law claims.[15]

---

[12] *See, e.g.*, Compl., *Brown v. Express Scripts, Inc.*, No. 3:04-cv-01822-AWT (D. Conn. filed Oct. 28, 2004) (alleging Express Scripts "pockets the difference between the actual cost of the prescription paid to the pharmacy and the higher (inflated) price charged to the Fund," thereby benefiting from a "secret differential or 'spread'"); Second Am. Compl., *Fidelity Ins. Co. v. Express Scripts, Inc.*, No. 4:03-CV-1521-SNL (E.D. Mo. filed Aug. 16, 2004).

[13] *See Medicaid Prescription Drug Reimbursement:  Why the Government Pays Too Much*, Hearings before Subcomm. on Oversight and Investigations, H.R. Comm. on Energy and Commerce, 108th Cong. 12, 13-71 (2004).

[14] *See Dunleavy*, 123 F.3d at 741.  As the District Court noted, "the percentage difference between an AWP based on a 20% markup," the previous industry norm, "and one based on a 25% markup will always be 4.16%."

[15] We will also affirm the District Court's order granting the defendants' motion to dismiss Morgan's allegations of "other pricing schemes," including "duplicate billing," "refilling violations," and "overbilling for professional fees," since Morgan fails to state those claims "with particularity," as required under Rule 9(b).