**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 21-2766

———————

In re:  JOHN VARVATOS ENTERPRISES INC, et al.,

Debtors

———————

TESSA KNOX, individually and as the Certified Representative
of the Class of Judgment Creditors,

Appellant

v.

LION HENDRIX CAYMAN LIMITED

———————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-20-cv-00937)
District Judge: Honorable Colm F. Connolly

———————

Submitted Under Third Circuit LAR 34.1(a)
June 9, 2022

Before: CHAGARES, <u>Chief Judge</u>, AMBRO, and FUENTES, <u>Circuit Judges</u>

(Opinion Filed: June 23, 2022)

AMBRO, Circuit Judge

In May 2020, menswear company John Varvatos Enterprises, Inc. ("Varvatos")—like many retailers in recent years—filed for bankruptcy. Just prior to filing, the company became liable for millions in damages stemming from a class action challenging its policy of giving free clothes to male, but not female, employees. Bankruptcy would leave this class of judgment creditors (the "Class") with only a fraction of that sum. So the Class filed an adversary complaint in the Bankruptcy Court seeking to subordinate the claim of a senior secured creditor so its own unsecured claim could be paid in full. The Court dismissed its complaint, and the District Court affirmed. We do the same.

I.

Varvatos sold its brand name "John Varvatos" menswear in stores nationwide. It gave its male sales professionals $12,000 a year in brand clothing to wear at work. Female sales professionals had no clothing allowance but were, in 2013, offered the ability to purchase clothes at a 50% discount from a different retailer, AllSaints.

In 2017, Tessa Knox, a former Varvatos employee, brought a sex-discrimination class action alleging that the company's clothing-allowance policy violated the Federal Equal Pay Act, the New York Equal Pay Act, the New York Human Rights Law, and Title

---

* This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

VII of the Civil Rights Act of 1964. The Court certified a class of 69 current and former women sales professionals, with Knox serving as class representative.

A jury found that Varvatos violated the civil rights laws and was liable for punitive damages under Title VII. On March 24, 2020, a judgment was entered in favor of the Class and against the company for $3,516,051.23. On May 6, Varvatos and two affiliated entities (collectively, the "Debtors") filed voluntary petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

The Debtors signed that same day an asset purchase agreement with Appellee Lion/Hendrix Cayman Limited ("LHCL"). At the time, LHCL owned Lion/Hendrix Corp., which owned Varvatos. LHCL in turn was majority-owned and controlled by affiliates of Lion Capital Fund III Partnerships. Under the proposed purchase agreement, LHCL would buy substantially all the Debtors' assets for $19,450,000 in cash and a credit bid of $76 million in secured debt held by it.

Because the sale would, if approved, leave little for holders of unsecured claims, the Class filed an adversary proceeding in the Bankruptcy Court seeking to equitably subordinate (that is, deprioritize) LHCL's secured claim. It alleged it would be unjust for LHCL to be paid before the Class because LHCL and its affiliates "encouraged" and "facilitated" Varvatos's unlawful clothing-allowance policy. App. 52 ¶ 45. The Bankruptcy Court held that the Class failed to state a claim for equitable subordination and dismissed its complaint without providing leave to amend. The District Court affirmed, and the Class now appeals to us.

## II.[1]

We review *de novo* a district court's appellate review of a bankruptcy court's decision, exercising the same standard of review as the district court. *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 389 n.3 (3d Cir. 2009). At the motion-to-dismiss stage, we accept all factual allegations as true to determine whether the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). But this assumption of truth does not apply to "naked assertion[s]" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678. Where the well-pled allegations fail to "nudge[] the[] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.

The claims of a debtor's creditors are paid per a priority scheme. As relevant here, secured claims (like that of LHCL) are given priority and paid before unsecured claims (like that of the Class). This scheme is "fundamental to the Bankruptcy Code's operation." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 984 (2017).

The Code does, however, permit a bankruptcy court to disturb the claim hierarchy "under principles of equitable subordination." 11 U.S.C. § 510(c)(1). That doctrine lets the court subordinate distribution of all or part of a higher priority claim in favor of a lower priority claim where justice so requires. *Id.*; *Winstar*, 544 F.3d at 411. For it to apply,

---

[1] The Bankruptcy Court had subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157. The District Court had jurisdiction over the appeal under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.

three factors must be met: (1) the higher priority creditor must have engaged in inequitable conduct, (2) that conduct injured a lower priority creditor or unfairly advantaged the misbehaving creditor, and (3) claim subordination would not be inconsistent with the Bankruptcy Code. *Winstar*, 544 F.3d at 411.

We begin and end with the first factor, as we agree with the Bankruptcy and District Courts that the Class failed to allege any inequitable conduct. *See Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 234 (3d Cir. 2003) (noting that "inequitable conduct may arise out of any unfair act by the creditor as long as the conduct affects the bankruptcy results of the other creditors"). The Class asserts that LHCL—though not a party in the class action proceedings—acted inequitably by "encourag[ing]" and "facilitat[ing]" Varvatos's discriminatory clothing-allowance policy. App. 52 ¶ 45. It premises this conclusion on a single allegation: that during the class action trial Ann Byron, Varvatos's former Vice President of Human Resources, testified that the "head of Lion" spoke with John Varvatos about Varvatos's clothing-allowance policy and "agreed that they would simply offer women sales professionals a 50 percent discount off the full retail price of certain clothes at another store in Lion's Fund III portfolio, AllSaints." App. 50 ¶ 28. This allegation overreads Byron's actual trial testimony:

> Q. Ms. Byron, do you recall when the AllSaints discount policy was instituted?
> A. I believe it was talked about potentially or instituted in 2013.
> Q. And how did it come to be put in place?
> A. The head of L[i]on Capital and John Varvatos spoke about the possibility of wanting to provide our female associates with a benefit since we did not produce any clothing for female associates.

App. 17. That testimony suggests only that an individual from "Lion Capital" discussed

5

with Varvatos the possibility of providing some benefit to the latter's women sales professionals. It does not support a reasonable inference that LHCL acted inequitably toward the Class.[2]

The Class submits that, if given another chance, it could offer more facts indicating LHCL's inequitable conduct. It thus contends the Bankruptcy Court erred in holding that any amendment to the complaint would be futile. We review a court's "denial of leave to amend for abuse of discretion, and review *de novo* its determination that amendment would be futile." *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Applying that standard, we also conclude amendment would be futile. The Class specifies no additional facts that might raise a reasonable inference that LHCL behaved badly. The Class broadly asserts that it could allege facts demonstrating that LHCL— rather than some other Lion entity—offered Varvatos the AllSaints discount and that Varvatos would, in the absence of that benefit, have changed its clothing-allowance policy. **Op. Br. at 15–16, 36.** But even if available and proven, this would suggest only that the provision of an LHCL-related benefit to Varvatos's women sales professionals contributed to Varvatos's decision to continue its prior misconduct, not that LHCL itself engaged in misconduct.

For these reasons, we affirm.

---

[2] The Class also argues that the Bankruptcy and District Courts erred by requiring it to allege that LHCL's conduct affected the "ordering of creditors" in the bankruptcy. Appellant Br. at 27. Because the Class's failure to plead inequitable conduct is fatal to its equitable subordination claim, we need not address this argument.