**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2296
_____

OFFICE FOR PLANNING AND ARCHITECTURE, INC.;
BRET PETERS,

Appellants

v.

CITY OF HARRISBURG;
WALLACE, MONTGOMERY & ASSOCIATES, LLP

_____

On appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:20-cv-00920)
U.S. District Judge: Honorable John E. Jones, III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 23, 2022

Before: McKEE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: September 15, 2022)

_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge.*

When parties to a contract foresee a contingency and agree on how to address it, courts hold them to those terms. A city contracted with a planning firm to draw up land-use plans. The contract gave the city the right to keep using those plans until the firm gave the city notice of a breach of contract and a chance to cure the breach. Now the firm is suing the city for copyright infringement. But because the firm has not followed the contract's procedure, the city still has the right to use the plans. So we will affirm the District Court's dismissal and denial of leave to amend.

## I. A LAND-PLANNING DEAL GOES SOUR

In 2015, the City of Harrisburg wanted to redesign its land-use planning. It hired the Office for Planning and Architecture, Inc., run by Bret Peters, to do the job.

The firm started work, but relations soon soured. In 2016, the city allegedly refused to pay what it owed. Work stalled and did not resume. Instead, in 2019, the city hired a new company to continue the project, building on the firm's work.

The firm soon acquired a federal copyright in the land-use plans, told the city that it was infringing that copyright, and ordered it to stop. The city refused. So the firm sued it in federal court for copyright infringement and in state court for breach of contract.

The District Court dismissed the copyright-infringement case. It held that the firm had only one way to end the city's license: follow the contract. In other words, the firm needed to notify the city that it was ending the contract and give the city a chance to cure its alleged breach. Since the firm never followed that procedure, the license remained in effect and the city was not infringing the copyright.

2

After the court dismissed this case, the firm sought to amend its complaint. It offered three alternative arguments: 1) it *couldn't* terminate the license, 2) it *didn't have to* terminate the license, and 3) it had *a right to* rescind the license. But it never argued that it *had* terminated the license under the contract. So the District Court rejected the proposed amendments as futile. We agree.

We review both the denial of the motion to amend and the dismissal. By appealing the former, the firm brings up the latter for review as well. Fed. R. App. P. 4(a)(4)(A)(iv), (B)(ii); *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 78 (3d Cir. 1982). In reviewing both futility and the dismissal, we ask whether the amended complaint would fail to state a claim on which courts could grant relief. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). We review the denial of amendment for abuse of discretion, but the underlying futility ruling and prior dismissal de novo. *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018); *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

## II. THE DISTRICT COURT PROPERLY DISMISSED THIS CASE

By signing the contract, the firm gave the city a nonexclusive license to use its work product, "provided that the [city] substantially performs its obligations." App. 55, § 3.3. The same section of the contract specifies how the firm may end that license: "If the [firm] rightfully terminates [the contract] for cause as provided in Section 5.4, the license granted in this Section 3.3 shall terminate." *Id.* And to terminate the contract for cause, the firm needed to give notice and a chance to cure any default. This is what it failed to do.

3

For the city, ending the license is separate from ending the contract. Like the firm, the city could terminate for cause under Section 5.4. Or it could terminate the contract "for [its] convenience and without cause." App. 57 §5.5. But these provisions do not affect the license. "The [city's] rights to use [the land-use plans] in the event of a termination of this [contract] are set forth in" the license-granting section. App. 57 §5.8. And that section tells us that the license terminates only when the firm, not the city, terminates the contract.

That arrangement makes sense. If the city terminated the contract, doing so would not return the city to square one. It would have to pay for the land-use plans, and it would get to keep using them in its project. For the city to lose its right to use the plans, it would not only have to stop paying (a material breach), but also get the required notice and chance to cure.

The city terminated the contract, and the parties dispute whether there was a material breach. In any event, the firm never gave the notice required to terminate the license. So the license is still in force, and the city did not infringe the firm's copyright by using the plans.

### III. THE DISTRICT COURT PROPERLY DENIED LEAVE TO AMEND

Though the firm wanted to amend its complaint to add three new arguments, none of them would have moved the needle. So amending would have been futile.

**A. The city never prevented the firm from terminating the license**

The firm argues that it was "robbed of the opportunity to terminate the Agreement pursuant to Section 5.4 by the city's self-serving, dishonest machinations." Appellants' Br. 20.

4

In other words, the city supposedly strung the firm along while secretly planning not to continue the deal. We are not persuaded. The city never stopped the firm from exercising its contractual right to end the license. And even if the city had somehow tricked the firm into thinking that the deal might be salvageable, the firm discovered the ruse. It wrote a demand letter, telling the city that it was infringing its copyright. So the firm could have ended the license at any time.

**B. The city did not terminate the license by terminating the contract**

The firm next argues that by terminating the contract, the city also terminated the license. By ending the contract, the city supposedly "relieved [the firm] of the duty to take steps to terminate the [contract]" because "[a] contract can only be terminated once." Reply Br. 3–4. Not so. Terminating a contract excuses future performance but does not undo past performance.

The contract reflects this understanding: If the city terminated without cause, work would cease. But the firm would get paid for the work it had done, and the city would get to use that work. And if a party materially breached the contract, the remedy would be expectation damages—not rescission. The firm granted the city the license when it executed the contract, so its continued existence was not a matter of future performance. Even after the city ended the contract, the firm needed to take extra steps to end the license.

**C. The firm had no right to rescind the license without following the contract's procedures**

The firm has one more argument: the city materially breached its contractual covenants, giving the firm a right to rescind the license. True, a material breach of contract sometimes

creates a right to rescind a copyright license. *See* 3 *Nimmer on Copyright* §10.15 (2022). But that is beside the point. Everyone agrees that, under the contract, the firm can end the license. But the parties contracted for a specific procedure. If the city materially breached, the firm could end the license only after giving notice and a chance to cure. Because the contract already addresses this situation, we will not fashion a new procedure.

**D. The District Court did not abuse its discretion by denying amendment**

If nothing else, the firm argues, it should at least have gotten a chance to amend to argue these points. But the District Court reasonably denied it that opportunity. The firm had a chance to make these arguments. And the District Court found that the arguments were futile in any event.

\* \* \* \* \*

When the parties to a contract address how they will handle a situation, we respect their terms. The parties agreed to a specific procedure for ending the license. Yet the firm did not follow the steps needed to do that. So we will affirm.