**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3224
_____

MAIDEN CREEK ASSOCIATES, L.P.;
BOARD OF SUPERVISORS OF MAIDENCREEK
TOWNSHIP,

Appellants

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION;
SECRETARY UNITED STATES DEPARTMENT OF
TRANSPORTATION;
ADMINISTRATOR FEDERAL HIGHWAY
ADMINISTRATION;
PENNSYLVANIA DEPARTMENT OF
TRANSPORTATION
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 5-15-cv-00242)
District Judge: Honorable Lawrence F. Stengel
_____

Argued: April 5, 2016
_____

Before: FISHER, RENDELL and BARRY, *Circuit Judges*

(Opinion Filed: May 19, 2016)
_____

Marc B. Kaplan, Esq. (Argued)
Daniel R. Utain, Esq.
Kaplin, Stewart, Meloff, Reiter & Stein
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA 19422

*Counsel for Maiden Creek Associates, L.P.*

Christopher M. Garrell, Esq. (Argued)
Eugene Orlando, Jr., Esq.
2901 St. Lawrence Avenue
Reading, PA 19606

*Counsel for Supervisors of Maiden Creek*

James A. Maysonett, Esq. (Argued)
Environment & Natural Resources Division
RFK-2633
P.O. Box 7415
Washington, DC 20044
        -AND-
Susan D. Bricklin, Esq.
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Counsel for Secretary U.S. Department of Transportation and
Administrator Federal Highway Administration*


Kenda Jo M. Gardner, Esq. (Argued)
Commonwealth of Pennsylvania
Office of Chief Counsel
P.O. Box 8212
Harrisburg, PA  17105

*Counsel for PA Department of Transportation*

_____

OPINION OF THE COURT
_____

BARRY, *Circuit Judge*

This action for declaratory and injunctive relief is brought pursuant to the National Environmental Policy Act, 42 U.S.C. § 4321. Maiden Creek Associates and the Board of Supervisors of Maidencreek Township appeal the order of the District Court dismissing their complaint and denying their motion to amend. We will affirm the judgment of the District Court.

## I.   BACKGROUND

Maiden Creek Associates ("MCA"), a limited partnership, owns 85 acres of land in Maidencreek Township that it hopes to develop into a 600,000 square-foot shopping center. The Board of Supervisors of Maidencreek Township (the "Board") has taken the public position that the shopping center is "vital" to the economic well-being of the Township residents. (Compl., at ¶43.) MCA and the Board claim, however, that the Pennsylvania Department of Transportation's ("PADOT" or "PennDOT") plan to improve an adjacent highway, State Route 222, will impede what they hope to accomplish.

PADOT's Project would involve the following: (1) widening the highway from one traffic lane in each direction to a five-lane cross section with two lanes in each direction and a center turn lane; (2) improving the existing traffic signal at Route 222 and Route 72; (3) replacing an existing traffic signal at the intersection of Route 222 and Tamarack Boulevard/Genesis Drive with a dual lane roundabout; (4) constructing a new, dual lane roundabout at the unsignaled intersection of Route 222 and Schaeffer Road; and (5) constructing two storm water detention basins on MCA's

3

property. The Project would be undertaken by PADOT on behalf of the United States Department of Transportation and the Federal Highway Administration, and fully funded by the federal government.

MCA opposed the Project from the outset, but its basis for doing so has changed over time. Initially, it maintained that the Project should not go forward because the traffic circles would not be able to handle all of the traffic expected to be generated by its shopping center. MCA expressed its concerns to PADOT directly in a string of correspondence, and was heard publicly on July 17, 2014 before the Reading Area Transportation Study ("RATS"). RATS characterized MCA's concern as regarding "[d]esign issues with [the] proposed roundabout" and "its ability to accommodate a proposed shopping center." (Compl., at ¶52.) In response, RATS offered that "[u]tilizing current PennDOT roundabout analysis software, PennDOT is projecting acceptable future levels of service for all legs of [Route] 222 and Genesis Drive, and [Route] 222 and Schaeffer Road intersections and feel[s] that their design will not preclude the ability to develop." (*Id*.)

The Project was approved on August 6, 2014, at which time PADOT also made a critical finding regarding the degree of environmental review mandated by the National Environmental Policy Act ("NEPA"). NEPA requires that one of three levels of review be conducted for such projects, depending on, among other things, the extent of the environmental impact: (1) actions that significantly affect the environment require an Environmental Impact Statement; (2) actions for which the significance of the environmental impact is unclear require an Environmental Assessment; and (3) actions that do not individually or cumulatively have a significant environmental effect are entitled to a Categorical Exclusion from preparing an Environmental Impact Statement or Environmental Assessment. 23 C.F.R. § 771.115. Finding that the Project satisfied the criteria for the Categorical Exclusion set out in 23 C.F.R. § 771.117(d), PADOT necessarily concluded that neither an Environmental

4

Assessment nor an Environmental Impact Statement were required under the Act.

MCA and the Board commenced this action in response, naming as defendants the United States Department of Transportation; its Secretary, Anthony Foxx; the Federal Highway Administration; its Administrator, Gregory G. Nadeau ("Federal Appellees"); and PADOT and its Secretary, Barry J. Schoch ("State Appellees"). MCA and the Board alleged in their joint complaint that the Categorical Exclusion approval was based on inaccurate information supplied by PADOT that had not been adequately studied or investigated, and that the findings and conclusions contained therein were arbitrary and capricious. They argued that, in submitting and approving the Categorical Exclusion, "PADOT (i) failed to consider important aspects of the environmental issues associated with the Project; (ii) ignored material information supplied by MCA; and (iii) disseminated completely inaccurate information that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." (MCA Br. at 5.) These procedural "defects" notwithstanding, the defendants' response was that the crux of the issue, as initially pled, concerned only the economic impact of the planned highway improvement; that, "[a]side from some general allegations about increased traffic and the safety of motorists, all of the injuries alleged by MCA and the Board … were purely economic—neither alleged that the project would harm the environment." (Federal Appellees Br. at 5-6.)

Defendants moved to dismiss on precisely the same basis. In their motion filed May 11, 2015, they argued that NEPA is meant to protect the environment and that MCA and the Board could not sustain claims thereunder because their "sole[ly]" economic pursuits fell outside of NEPA's "zone of interests." (A266-270). MCA and the Board opposed the motion, and also moved for leave to amend their complaint. On August 20, 2015, the District Court granted the motion to dismiss. The Court concluded that MCA and the Board's interests were economic and inconsistent with NEPA's goal

of protecting the environment, and that, therefore, they lacked prudential standing to pursue their claims under the statute. The Court also denied their motion for leave to amend as futile, finding that the new allegations inappropriately rested on injuries to third parties and were otherwise too speculative or generalized to support a claim.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331, as the claims in this case were brought under the Administrative Procedure Act, 5 U.S.C. § 702. We have jurisdiction under 28 U.S.C. § 1291.

*First*, we exercise plenary review over the dismissal of a complaint for failure to state a claim,[1] "accept[ing] all well-pleaded allegations in the complaint as true and draw[ing] all reasonable inferences in favor of the non-moving parties." *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 921 n.1 (3d Cir. 2015). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is satisfied only if

---

[1]    Although appellees moved to dismiss under Rule 12(b)(1) for lack of jurisdiction and the District Court appeared to dismiss the complaint under that rule, we must analyze its dismissal under Rule 12(b)(6) because the issue is whether appellants alleged harm that falls within NEPA's zone of interests, a question of statutory standing. *See Leyse v. Bank of Am. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) ("Unlike Article III standing, statutory standing is not jurisdictional. *See Lexmark Int'l, Inc. v. Static Control Components*, 134 S. Ct. 1377, 1388 & n.4 (2014). As a result, '[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim,' and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)." (citation omitted)).

the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Second*, although we review a denial of leave to amend for abuse of discretion, we review the District Court's determination that the amendment would be futile *de novo*. *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.,* 769 F.3d 837, 849 (3d Cir. 2014). To evaluate futility, we apply the "same standard of legal sufficiency" as would be applied to a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). As with the motion to dismiss, we consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. ANALYSIS

Because NEPA does not include a citizen's suit provision, MCA and the Board commenced this action by way of the Administrative Procedure Act ("APA"), Section 702. 5 U.S.C. § 702. Parties bringing suit under that provision must establish their Article III standing[2] and demonstrate that their grievance falls within the "zone of interests" to be protected or regulated by the statute in question. *See Assoc. of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970). The latter requirement forms the center of our inquiry. Appellees submit that the purpose of NEPA is to ensure that environmental concerns are integrated into their decision making process, and argue that the "injuries" alleged in both the complaint and the proposed amended complaint fall outside the "zone of

---

[2] The District Court found that both MCA and the Board established Article III standing in light of MCA's allegation that the Project will require condemnation of part of its property and the Board's allegation that the Project will prevent it from carrying out its economic plans for the Township. (A15-16.)

7

interests" advanced by the Act.

NEPA is a procedural statute that was enacted to "declare a national policy which will encourage productive and enjoyable harmony between man and his environment; [] promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; [and] enrich the understanding of the ecological systems and natural resources important to the nation." 42 U.S.C. § 4321. It seeks to protect and promote environmental quality, 42 U.S.C. § 4331(a)-(c), and, to "ensure this protection, [NEPA] establishes 'action forcing' procedures the agencies must follow." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 448 (10th Cir. 1996). NEPA does not "mandate the particular decisions an agency must reach"; rather, it sets forth the "necessary process the agency must follow while reaching its decisions." *Id.*

The Act does not, however, require an agency to assess every impact of a proposed action—only its impact or effect on the physical environment. *Metro. Edison Co. v. People Against Nuclear Energy,* 460 U.S. 766, 772 (1983). While the statute makes reference to human health and welfare, the Supreme Court has explained that those considerations do not form the statute's primary focus. Rather, those "goals are *ends* that Congress has chosen to pursue by *means* of protecting the physical environment." *Id.* at 773 (emphasis in original). Courts have thus found that organizations with genuine environmental interests are proper parties to represent the public's environmental interests and challenge agency action. *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 941 (9th Cir. 2005). Conversely, courts have found that parties motivated solely by their own economic self-interest should not be entrusted with the responsibility of asserting the public's environmental interest. *Id*.

### 1. The Initial Complaint

Appellees argue to us, as they successfully argued to the District Court, that the initial complaint alleged only non-

8

environmental harm—that the Project would not properly accommodate the traffic attendant to MCA's proposed shopping center, and that the Township's tax base will be negatively impacted thereby.

MCA alleged that (1) "PADOT's construction of the Schaeffer Roundabout would require vehicles to access the Proposed Shopping Center directly from the Schaeffer Roundabout, which would result in unsafe traffic conditions" (Compl., at ¶36); and (2) the "proposed Schaeffer Roundabout cannot be designed in a manner that would safely accommodate the amount of traffic that will be generated by the Proposed Shopping Center," (¶37), and "would also require the condemnation of a portion of the Property in order for PADOT to physically construct the proposed Schaeffer Roundabout." (¶38.) The Board alleged similar injuries: the "construction of the Genesis Roundabout and the Schaeffer Roundabout" will "severely impede commercial development of the Route 222 Corridor in the Township," "impair the ongoing viability of existing businesses within the Route 222 Corridor by restricting and impeding ingress and egress to those businesses," and "compromise the safety of motorists, bicycles, horse and buggies and pedestrians traveling within the Route 222 Corridor." (Compl., at ¶¶45-47.) The Board also emphasized that development is "vital" to the economic well-being of the Township, and implied that any obstacle thereto would negatively affect jobs, tax revenues, and local businesses. (*Id.* at ¶43.)

To show that these injuries fell within NEPA's zone of interests, MCA and the Board relied primarily on this Court's decision in *Society Hill Towers Owners' Assoc. v. Rendell*, 210 F.3d 168 (3d Cir. 2000). Plaintiffs in that action were neighborhood residents who claimed that the City of Philadelphia had not properly analyzed the environmental consequences of its plan to build a hotel and parking garage in the Penn's Landing area of the City and failed to hold the meaningful public hearings that should be held when there is a substantial environmental controversy. *Id.* at 173-74 (citing 40 C.F.R. § 1506.6(c)(1)). The residents claimed that the

9

project would "increase traffic, pollution, and noise in the Society Hill area where they live" and also argued that the project would "have a detrimental effect on the ambiance of their historic neighborhood, [] impair their use and enjoyment of Penn's Landing, and [] decrease their property values." *Id.* at 176. Noting that if the residents did not have standing to protect the historic and environmental quality of their neighborhood, it was hard to imagine who *would* have standing to oppose the action, we held that these grievances were consistent with NEPA's zone of interests.

Here, however, MCA and the Board presented a very different set of purported injuries, and we find the analogy to *Society Hill* unpersuasive. In the initial complaint, MCA and the Board submitted only that the Project will compromise commercial development and result in unsafe traffic conditions along the highway. Arguing that they have the right to sue on that basis, MCA and the Board emphasize their belief that NEPA was intended to "ensure" that "man and nature can exist in productive harmony while fulfilling the social, economic, and other requirements of present and future generations of Americans." (Board Br. at 21-22.) As the Supreme Court already has made clear, however, NEPA's reference to human health and welfare does not displace the statute's primary focus. Indeed, the Court has explicitly cautioned against such an expansive approach: "If we were to seize the word 'environmental' out of its context and give it the broadest possible definition, the words 'adverse environmental effects' might embrace virtually any consequence of a governmental action that someone thought 'adverse.' But we think the context of the statute shows that Congress was talking about the physical environment -- the world around us, so to speak." *Metro. Edison Co.*, 460 U.S. at 772.

No doubt, changes in traffic patterns and increased congestion will have an impact on safety, commercial viability, and growth of the area. But to suggest that such injuries fall within NEPA's zone of interests would be to eviscerate the distinction between social and environmental

harm—one expressly preserved by the Supreme Court in *Metro. Edison. Co.* and in the regulatory definition of NEPA's "human environment." 40 C.F.R. § 1508.14 ("[E]conomic or social effects are not intended by themselves to require preparation of an environmental impact statement."). NEPA may capture those interests in certain circumstances, but only where they are sufficiently linked to imminent or threatened environmental damage. MCA and the Board failed to allege *any* "threatened harms to the 'physical' environment – 'the air, land and water which support life on earth,'" and their complaint was rightly dismissed on that basis. *Hurd Urban Dev., L.C. v.* FHA, 33 F.Supp.2d 570, 576 (S.D. Tex. 1998) (quoting *Metro. Edison,* 460 U.S. at 770).

## 2. The Proposed Amended Complaint

MCA and the Board made more detailed allegations in the proposed amended complaint, some of which came closer to NEPA's zone of interests.[3] MCA alleged, much like before, that the Project will create "unsafe traffic patterns" for MCA's patrons, (Proposed Amended Complaint ("PAC"), at ¶40(A)-(C)), and be "aesthetically unpleasant and

---

[3] The State Appellees argue that the request for leave to amend should also be denied as unduly delayed because the information underlying MCA and the Board's new allegations was available to them prior to their filing of the initial complaint. While it is difficult to believe that MCA and the Board were not aware of these purported environmental injuries until after commencement of this *environmental* litigation, the argument nonetheless lacks merit. MCA credibly responds in its reply brief that after the initial complaint was filed, it came to possess a number of documents grounding its amended complaint, including "engineered highway plans which showed PADOT's intentions to divert stormwater runoff from the highway improvements to two (2) stormwater detention basis to be located on MCA's Property to [filtrate] that runoff into the groundwater beneath the MCA Property." (MCA Reply Br. at 5.) We will address that allegation, *infra*.

11

intimidating to potential patrons," (¶40(E)), but also added allegations that it will increase "exhaust fumes from vehicles," (¶40(D)), create "additional stormwater runoff that would contain petroleum and other potential groundwater contaminants," (¶40(F)), may cause "flooding on the MCA Property," (¶40(G)), and damage "Peters Creek, which is identified as an [Exceptional Value Watershed]." (¶40(H).) The Board alleged that the Project would increase "pollution within the Route 222 Corridor," (PAC, at ¶41(A)), expose "Township residents" to "unsafe traffic patterns," (¶41(B)), be "asesthetically unpleasant," (¶41(C)), cause "groundwater contamination" and "flooding on Route 222 and private properties adjacent" thereto, (¶41(E)-(F)), and "increase the risk" of "potentially devastating cumulative environmental effects." (¶41(G).) For the following reasons, we agree with the District Court that these new allegations were nonetheless insufficient.

### a. Third Party Injuries

Unlike the residents in *Society Hill*, MCA and the Board allege certain environmental harm <u>not</u> to plaintiffs in the case (who they do not argue will be directly affected thereby), but to future employees and patrons of MCA, or to the Township residents of Maidencreek. From MCA, the proposed amended complaint's paragraph 40 subsection (e) complained that the Project would be "aesthetically unpleasant and intimidating to potential patrons, and would dissuade potential patrons from coming to the Proposed Shopping Center." (PAC, at ¶40(E).) And from the Board, subsection (b) claimed that the Project "will result in unsafe traffic patterns and conflicting movements by motor vehicles, bicyclists and pedestrians throughout the Route 222 Corridor within the Township, thereby unreasonably exposing Township residents and visitors to risk of injury." (PAC, ¶41(B).) These allegations will be disregarded for the same reason—they purport to assert the injuries of non-parties without satisfying the criteria for associational standing.

Certainly, an association may sue on behalf of its

members "when [such] members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000); *see also United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996) (the association must "include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association").

But MCA is a "Pennsylvania limited partnership which owns approximately 85 acres of commercially-zoned land … in Maidencreek Township … upon which it proposes to develop a commercial shopping center." (PAC, at ¶11.)  And while it may be permitted to assert claims on behalf of its partners (if satisfactorily pled), MCA may not represent the interests of "potential patrons" of its future shopping center. The Fourth Circuit dealt with a similar issue in *Taubman Realty Group Ltd. P'ship v. Mineta,* 320 F.3d 475 (4th Cir. 2003).   In that case, the plaintiff, Taubman Realty Group ("TRG"), owned and operated a shopping center and asserted claims under NEPA to prevent the construction of another shopping center nearby.   TRG alleged that construction would create undue traffic congestion, but the Fourth Circuit adopted the district court's reasoning and found that TRG failed to demonstrate its ability to represent such interests through associational standing:  "TRG claims to be asserting the safety and health interests of, and seeking to prevent perceived harm to, persons who are employed, and who shop, at the shopping center that TRG operates. Because the interests at stake in this case are not at all 'germane' to TRG's organizational purposes, however, it does not properly have standing to sue in an associational or representative capacity." *Taubman*, 198 F. Supp. 2d 744, 758 (E.D. Va. 2002), *aff'd* 320 F.3d at 481; *see also Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA,* 415 F.3d 1078, 1104 (9th Cir. 2005) (rejecting cattlemen's associations attempt to assert the environmental interest of members

13

because they were not "germane to the organization's purpose").

The same applies to the Board's allegations, to the extent they are predicated on interests of the Township and its residents. Simply stated, the Board is not the Township. The Board of Supervisors of Maidencreek Township is "the governing body of Maidencreek Township [], a second class township of the Commonwealth of Pennsylvania," (PAC, at ¶12), and the Township of Maidencreek, a non-party here, has authority to "sue and be sued" on its own behalf. (53 PA. STAT. AND CONS. STAT. ANN. § 66501.) The Board did not allege that its members—*i.e.,* the Supervisors themselves—have suffered environmental injuries, nor has it explained how it has the authority to represent the Township or its citizens in this action. Indeed, even if the Board were permitted to sue on behalf of Township residents as *parens patriae*, its claims likely would be barred because departments of the federal government are named as defendants. *See e.g., City of Olmsted Falls v. FAA,* 292 F.3d 261, 268 (D.C. Cir. 2002) ("Although 'the state, under some circumstances, may sue [as parens patriae] for the protection of its citizens, it is no part of its duty or power to enforce their rights in respect of their relations with the federal government. In that field it is the United States, and not the state, which represents them as parens patriae.'") (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923)).

### b. *Speculative Harm*

The proposed amended complaint also invoked injuries that are contingent on remote possibilities. In subsections (f) through (h) of paragraph 40, MCA claimed that the Project (specifically, the Genesis and Schaeffer Roundabouts) will result in "additional stormwater runoff" that will necessitate the construction of "Stormwater Basins" on the MCA property, which, MCA contends, will result in "groundwater contamination on and off" MCA's property *if* "inadequate[ly] designed." (PAC, at ¶40(F)-(H).) The Board made similar allegations in subsections (e) and (f) of

14

paragraph 41.

The District Court found these "hypothetical" allegations to be insufficiently specific and "highly speculative." (A26.) We agree. While stormwater contamination would appear to fall within NEPA's zone of interests, it is contingent upon the failure of the stormwater basin—a system, not yet even designed much less constructed, intended to prevent that very environmental consequence. Accepting them as true and with all inferences drawn in Appellants' favor, these allegations fail to show that the Project will create an increased risk of actual, threatened or imminent environmental harm, and on that basis will be disregarded.

### c. *Remaining Allegations*

The remaining allegations were likewise deficient. MCA claimed in subsection (d) that the Project "will result in noise and exhaust fumes from vehicle queues directly in front" of its property, (PAC, at ¶40(D)), and the Board submitted in subsections (a) and (g) that the Project will increase "noise and pollution" and "the risk of potentially devastating cumulative environmental effects." (¶41(A), (G).) Appellees argue, however, that these additional allegations were intended only to mask the actual, economic injury motivating this litigation. The Federal Appellees maintain that MCA and the Board have "long opposed" this Project on the economic ground that "its traffic circles will [not] be able to handle the amount of traffic that they hope to attract to their planned shopping center," not on account of any potential environmental impact. (Federal Appellees Br. at 22.)

The vast majority of NEPA authority makes clear that economic injury alone does not satisfy the statute's zone of interests test. *See, e.g., Ashley Creek Phosphate Co*, 420 F.3d at 940 (collecting cases and noting that the "zone of interests" protected by NEPA is "environmental" and that courts have thus "consistently held that purely economic interests do not

15

fall within NEPA's zone of interests"); *Nat'l Ass'n of Home Builders v. United States Army Corps of Engineers,* 417 F.3d 1272, 1287 (D.C. Cir. 2005) (finding that an "'allegation of injury to monetary interest alone may not,' of course, 'bring a party within the zone of environmental interests as contemplated by NEPA for the purposes of standing'") (quoting *Realty Income Trust v. Eckerd,* 564 F.2d 477, 452 (D.C. Cir. 1977)); *Central S.D. Coop. Grazing Dist. v. Sec. of the United States Dep't of Agric.*, 266 F.3d 889, 895 (8th Cir. 2001) (holding that "[e]conomic interests alone" are "clearly not within the zone of interests to be protected by" NEPA). And while litigants need not be "pure of heart" in their motivation to sue, NEPA "cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant." *Town of Stratford v. F.A.A.*, 285 F.3d 84, 88 (D.C. Cir. 2002). To be among those that Congress intended to bring suit under NEPA, a plaintiff's actual interests must substantially align with the protection of our physical environment.

Recognizing the force of this law, MCA and the Board belatedly argued that the Project may result in "fumes," "pollution," and "noise," while making no effort to hide their obvious and strong interest in the success of MCA's proposed shopping center. In connection with a resolution passed in opposition to the Project, the Board advised PADOT that the planned construction will "severely impede commercial development of the Route 222 Corridor in the Township" and "deprive the Township of the needed revenues, employment and provision of goods associated with commercial development." (PAC, at ¶72(A).) Similarly, MCA alleged that it "repeatedly advised PADOT" that the Project "will prevent MCA from constructing the Proposed Shopping Center, which development is an integral part of the Township's planned growth and creation of employment and tax revenues." (PAC, at ¶72(B).) Together, they maintained that, "[i]f the Proposed Shopping Center and other anticipated commercial development along the Route 222 Corridor is unable to occur because of the Project, the Project will have a significant detrimental impact upon economic activity and the

16

creation of jobs within the Township and the region." (PAC, at ¶73(B).)

In reviewing the District Court's decision to deny the motion to amend the complaint, we accept as true all allegations contained therein. But in doing so, we also acknowledge the real interest that MCA and the Board have in developing the region purportedly affected by this highway construction. While MCA and the Board now allege that the Project may result in certain "environmental effects," the proposed amended complaint makes clear that such harms are only fortuitously aligned with their stated interests. This places them outside the statute's zone of interests for good reason. To accept NEPA litigants whose interests accidentally overlap with the statute's intended purpose would not only create a class of plaintiffs far larger than Congress originally intended, it also would serve to distort the effect of NEPA itself. *See Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 925 (D.C. Cir. 1989) ("[J]udicial intervention may defeat statutory goals if it proceeds at the behest of interests that coincide only accidentally with those goals.") (internal quotation marks omitted)). The motion to amend the complaint was properly denied as futile.

## IV. CONCLUSION

We will affirm the order of the District Court granting the motion to dismiss the complaint and denying the motion to amend.