**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3019
_____

UNITED STATES OF AMERICA, Ex Rel.
SUEDA WHATLEY;
JOHN AND JANE DOE, individually

v.

EASTWICK COLLEGE;
HOHOKUS SCHOOLS;
EASTWICK EDUCATION;
THOMAS EASTWICK

Sueda Whatley; John and Jane Doe, individually,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil Action No. 2-13-cv-01226)
District Judge: Honorable William J. Martini
_____

Argued:  September 14, 2016
_____

Before: CHAGARES, GREENAWAY, JR. and RESTREPO, *Circuit Judges*.
_____

(Filed: October 28, 2016)

Robert J. Donaher, Esq.
Herold Law
25 Independence Boulevard
Warren, NJ 07059

James A. Plaisted, Esq. [ARGUED]
Walder Hayden
5 Becker Farm Road
3rd Floor
Roseland, NJ 07068

*Counsel for Appellant*

Renee Steinhagen, Esq.
Appleseed Public Interest Law Center
744 Broad Street, Room 1525
Newark, NJ 07102

*Counsel for Amici Curiae*

Peter R. Bray, Esq. [ARGUED]
Bray & Bray
100 Misty Lane
Lanidex Executive Center
Parsippany, NY 07054

Steven M. Gombos, Esq. [ARGUED]
Rizert & Leyton
11350 Random Hills Road
Suite 400
Fairfax, VA 22030

*Counsel for Appellees*

———————————

OPINION[*]

———————————

GREENAWAY, JR., *Circuit Judge.*

Relator-Appellant Sueda Whatley appeals the District Court's judgment dismissing with prejudice her First Amended Complaint ("FAC") against Defendants-Appellees Eastwick Education, Eastwick College, Hohokus Schools, and Thomas Eastwick for violations of, inter alia, the False Claims Act ("FCA") and New Jersey Consumer Fraud Act ("NJCFA"). She also appeals the District Court's judgment denying her motion to file a Supplemental Amended Complaint ("SAC"). For the following reasons, we will affirm the District Court's judgments.

## I. Background[1]

Appellees Eastwick College and Hohokus Schools (collectively, the "Schools") are for-profit educational institutions owned by Thomas Eastwick through Eastwick Education. Whatley was enrolled at Hohokus Schools from August 2011 to October

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] As this matter is before us at the motion to dismiss stage, the following facts, which are taken from the allegations in the FAC, are set forth as if true. *See Pittsburgh*

3

2012 in various nursing-related programs. After suffering an accident, Whatley took medical leave from her program and eventually decided to withdraw from the program. On February 26, 2013, she filed suit against Appellees, asserting several FCA and state law claims. After the United States declined to intervene in her suit, Whatley filed the FAC, which is the subject of this appeal, on July 3, 2014. The FAC alleges a wide-ranging effort on the part of Appellees to mistreat prospective and current students of three main educational programs: Licensed Practical Nursing ("LPN"), Bilingual Licensed Practical Nursing ("BLPN"), and Medical Assistant ("MA").[2]

The Schools employed Admissions Counselors/Sales Representatives ("AC/SRs") to recruit prospective students into school programs. School administrators provided cash incentives at the annual holiday party of between $300 and $1,000 to those AC/SRs who enrolled the most students. As a result of this practice, AC/SRs recruited students who were not qualified for the LPN program into the less-demanding BLPN/MA programs. In order to convince prospective students to sign up for the MA program, AC/SRs falsely promised the students that their credits from the MA program would be transferable to the LPN program and to other schools. AC/SRs also falsely represented to prospective students that 71% of LPN and 77% of BLPN students graduated on time and

*Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 187 n.1 (3d Cir. 2009).

[2] The FAC contains allegations involving multiple aspects of the Schools' programs. The following is a recitation only of the factual allegations in the FAC that are most relevant to our analysis.

that 77% of LPN graduates obtained jobs after graduation.

As soon as students enrolled in a program, they were immediately assessed book fees, lab fees, and "other fees" for the entire program (described as "frontloaded" fees). The Schools drew down the students' available federal financial aid to satisfy these fees, but did not provide refunds of frontloaded fees for students who failed out of a program. In addition, no refunds of the frontloaded fees were provided to students who transferred from the BLPN/MA programs to the LPN program, so those students were assessed the fees twice. Book fees were grossly inflated, and lab fees were exorbitant because school labs contained only basic medical equipment. The Schools did not describe what costs "other fees" were meant to cover, but Whatley alleges that those fees were meant to cover the cost of processing FAFSA applications.

For many students who enrolled in a program, grades were arbitrarily assigned. Some students had their grades artificially inflated to prevent them from failing out of their program. Other students had their grades artificially depressed to ensure that they failed courses. After a student failed a course, school administrators conditioned continued enrollment on the student paying with his or her personal funds to retake the course.

Whatley's personal experience with Hohokus Schools, in large part, mirrors the general allegations described above. However, Whatley also alleges that Hohokus Schools claimed federal financial aid for her education in the month after she withdrew

5

from her program. Hohokus Schools drew down these federal funds despite the fact that Whatley was told she had successfully withdrawn and would not incur any financial obligations for her program. In order to justify the claim of federal funds, Whatley's attendance records were altered to falsely reflect that she had attended a course in the program after her withdrawal.

On November 21, 2014, Appellees filed a motion to dismiss the FAC for failure to state a claim. Whatley opposed the motion and also moved for leave to file the SAC, which added ten plaintiffs to the action and restyled the state law claims in the FAC as a class action.

The District Court began by reviewing the FCA counts in the FAC and determined that those counts were deficient. Having found the federal claims in the FAC to be deficient, the District Court declined to exercise supplemental jurisdiction over the state law claims in the FAC. The District Court then turned to the SAC and determined that it failed to cure the deficiencies in the FCA counts. However, because the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), provided an independent basis for federal jurisdiction over the state law claims in the SAC, the District Court examined those claims and found them to be deficient as well. The District Court then observed that Appellees' motion to dismiss papers put Whatley on notice of the deficiencies in the FAC and Whatley had nonetheless failed to cure those deficiencies in the SAC. On the basis

of those findings, the District Court dismissed the FAC with prejudice, and denied

Whatley's motion for leave to amend.  Whatley timely appealed.

## II.	Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, 31 U.S.C.

§ 3732(a), and 28 U.S.C. § 1367.  We have appellate jurisdiction pursuant to 28 U.S.C.

§ 1291.

We exercise plenary review over the District Court's dismissal of the complaint.

*Pearson v. Sec'y Dep't of Corr*., 775 F.3d 598, 601 (3d Cir. 2015).  We accept as true all

well-pled factual allegations in the complaint and draw all reasonable inferences in favor

of the plaintiff.  *Id.* at 604.  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Id.* (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  Because FCA and NJCFA claims allege fraud, they are subject to the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *U.S. ex rel.*

*Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 301 n.9 (3d Cir. 2011); *Frederico v.*

*Home Depot*, 507 F.3d 188, 202–03 (3d Cir. 2007).  In order to satisfy Rule 9(b), a

complaint must provide "all of the essential factual background that would accompany

'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and

how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198,

217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

"[A]lthough we review a denial of leave to amend for abuse of discretion, we review the District Court's determination that . . . amendment would be futile de novo." *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (emphasis omitted). In determining whether amendment would be futile, we "apply the 'same standard of legal sufficiency' as would be applied to a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

## III. Analysis

We begin by examining the FCA counts in the FAC to determine whether the District Court properly dismissed the FAC. We then turn to the SAC to determine whether the District Court correctly denied Whatley's motion for leave to amend.

### A. Dismissal of the FAC

"[T]he FCA makes it unlawful to knowingly submit a fraudulent claim to the government." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 840 (3d Cir. 2014). To that end, the Act contains a qui tam provision that permits private parties (known as "relators") to bring suit "on behalf of the United States against anyone submitting a false claim to the Government." *Id.* (internal quotation marks omitted) (quoting *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 941 (1997)). If a qui

tam suit is successful, the relator has the opportunity to share in the recovery.

We have previously recognized that "[t]here are two categories of false claims" that may form the basis of an FCA qui tam suit:  (1) factually false claims; and (2) legally false claims.  *Wilkins*, 659 F.3d at 305.  "A claim is factually false when the claimant [knowingly] misrepresents what goods or services that it provided to the Government." *Id.*  "[A] claim is legally false when the claimant knowingly falsely certifies that it has complied with" a material statute, regulation, or contractual provision.  *Id.*  Such certification may be express or implied.  "Under the 'express false certification' theory, [a claimant] is liable under the FCA for falsely certifying that it is in compliance with" a material statute, regulation, or contractual provision.  *Id.*  By contrast, implied false certification liability attaches when a claimant "makes specific representations about the goods or services provided" and the claimant's "failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016).

The FAC contains five FCA counts and we address each in turn.  Count one premises FCA liability on the following general allegations:  (1) the Schools transferred students in between the BLPN/MA and LPN programs thereby drawing down students' federal financial aid for multiple sets of book fees, lab fees, and "other fees"; (2) book fees and lab fees were exorbitantly priced; and (3) the Schools "frontloaded" charges for

9

book fees and lab fees, which were not refunded if a student later withdrew from or failed out of a program.

Whatley states numerous times that the Schools' behavior as to count one resulted in the submission of "fraudulent" or "false" claims to the government. However, beyond those conclusory assertions, Whatley makes no attempt to situate the Schools' alleged behavior within the established FCA liability framework that we outlined above. Whatley does not explain how the Schools submitted any factually false claims because she does not identify any misrepresentations made by the Schools to the government about their alleged behavior. *See Wilkins*, 659 F.3d at 305. Similarly, Whatley does not explain how the Schools submitted any legally false claims because she does not identify any statutes, regulations, or contractual provisions that the Schools violated through their alleged behavior. *See U.S. ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 445 (3d Cir. 2004).

For example, Whatley does not identify any misrepresentation made by the Schools to the government with respect to the cost of book fees or lab fees (factual falsity) or any statute, regulation, or contractual provision that requires the Schools to set those fees within a certain range (legal falsity). To take another example, Whatley does not identify any misrepresentation made by the Schools to the government with respect to potential future refunds of the frontloaded fees for students who withdrew from or failed out of a program (factual falsity). Nor does she identify any statute, regulation, or

10

contractual provision that the Schools violated by not providing refunds of frontloaded fees for such students (legal falsity).[3]  We therefore agree with the District Court's dismissal of count one of the FAC.

Counts two to four of the FAC allege that the Schools violated specific statutes and regulations and so are properly premised on legally false claims.  Specifically, count two alleges that the Schools falsely certified compliance with the Higher Education Act ("HEA") ban on incentive payments for recruitment employees, 20 U.S.C. § 1094(a)(20). The FAC includes only a single well-pled allegation as to incentive payments.  It alleges that AC/SRs who "recruited a greater number of students would be publicly rewarded with cash bonuses at the end of the year at the annual holiday party, of $300, $500 or $1000." App. 87 ¶ 91.  However, this allegation is insufficiently particular under Rule 9(b).  No information is provided as to *who* provided the payments, to *whom* the payments were made, or under *what* criteria the payments were awarded.  *See U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1169, 1175 (9th Cir. 2006) (concluding violation of incentive compensation ban sufficiently pled where complaint "allege[d] *specific instances* of violation, where higher salaries, benefits, and incentives were given

_____

[3] In demonstrating the insufficiency of Whatley's pleading and argument on this point, Appellees point us to the relevant regulation that governs the refund of federal financial aid required when a student withdraws from a program, 34 C.F.R. § 668.22. However, as Appellees observe, Whatley "neglects to provide any of the factual allegations necessary for a court to infer that [Appellees] violated this provision." Appellees' Br. at 25.

11

in response to increased enrollment" (emphasis added)). Therefore, the District Court properly dismissed count two of the FAC.

Count three alleges that the Schools falsely certified compliance with the HEA ban on charging fees for processing FAFSA applications, presumably in violation of 20 U.S.C. § 1094(a)(2). The FAC alleges that "[the Schools] charged each and every student who was enrolled multiple 'fees' and 'other fees' in addition to application fees and those charges were to cover FAFSA costs." App. 101 ¶ 172. The FAC concedes that the fees were "not specifically labeled as fees for processing FAFSA paperwork" but alleges "upon information and belief, such other fees were in fact to cover the cost of that service." App. 101 ¶ 173. A plaintiff is permitted to plead on information and belief in the Rule 9(b) context "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *In re Rockefeller*, 311 F.3d at 216. However, even assuming Whatley had made such a showing here, when pleading on information and belief, "boilerplate and conclusory allegations will not suffice" and the plaintiffs must make "factual allegations that make their theoretically viable claim plausible." *Id.* (emphasis omitted) (quoting *Burlington Coat Factory*, 114 F.3d at 1418). Count three contains no such factual allegations, instead relying on the conclusory assertion that Whatley believes the fees were to cover FAFSA costs. Since the FAC's allegations as to count three amount to nothing more than speculation, the District Court properly dismissed that count.

12

Count four alleges that the Schools falsely certified compliance with regulations requiring that they establish a satisfactory academic progress policy, 34 C.F.R. § 668.34. Whatley argues that the Schools violated those regulations by arbitrarily passing and failing students. However, the underlying allegations as to the arbitrary grade assignment scheme fail to satisfy Rule 9(b). Although the FAC alleges that many students' grades were arbitrarily inflated or depressed by school administrators and teachers, it fails to specify what specific grades were altered by what individuals in what semesters. *See Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 158 (3d Cir. 2014) (observing that FCA complaint that included patient logs showing consumption of medicine alleged to be misused satisfied Rule 9(b)). Thus, the District Court properly dismissed count four of the FAC.

Count five of the FAC details Whatley's personal experience with Hohokus Schools and is premised on many of the same general allegations of improper conduct we examined above with respect to count one. However, count five also contains an additional set of allegations specific to Whatley that suggest Hohokus Schools claimed federal financial aid funds for her education after she had withdrawn from her program and altered her attendance records to justify that claim of funds. These allegations similarly fail to satisfy Rule 9(b) because they do not specify who made key misrepresentations to Whatley during the withdrawal process or who altered her attendance records. Accordingly, the District Court properly dismissed count five of the

13

FAC.

### B. Denial of Motion for Leave to Amend

As we noted above, Whatley filed a motion for leave to file the SAC, which the District Court denied. After reviewing the SAC, we agree with the District Court that the SAC does not cure the deficient allegations of the FCA counts of the FAC. However, as the District Court observed, the SAC restyles the state law claims from the FAC into a class action brought under CAFA, and so we will examine the state law counts of the SAC.

Count five of the SAC purports to bring a consumer fraud claim against Appellees under the NJCFA. This NJCFA claim is based on all of the allegations of misconduct in the SAC. Our review of the SAC reveals that, although it sporadically provides particularized detail in places, as a whole, it continues to rely on conclusory assertions that are devoid of the factual support—who, what, when, where, and how—required by Rule 9(b). *See In re Rockefeller*, 311 F.3d at 217. The following examples are illustrative of the general pleading deficiencies of count five of the SAC.

The SAC repeats the FAC's general allegation that student grades were arbitrarily inflated and depressed by school administrators and teachers, but fails to allege the details of any specific instances of grade manipulation. It alleges that credits from the Schools were not transferable to other schools but does not specify what credits were not transferable and specific institutions that refused to accept those credits. It goes on to

14

attribute general misrepresentations to the Schools' employees without providing details of the "time, place, and contents of the false representations or omissions" or "the identity of the person making the misrepresentation[s]." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1297 (3d ed. 2016); *see, e.g.*, App. 137 ¶ 57; App. 144 ¶¶ 114, 118; App. 153 ¶¶ 186, 195. Thus, we conclude that the allegations of count five of the SAC are insufficient to meet the Rule 9(b) pleading standard.

Count six of the SAC purports to bring a claim for a breach of the covenant of good faith and fair dealing, which requires the existence of a contract between the Schools and students. *See Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."). As the District Court observed, the SAC fails to identify such a contract. Count seven of the SAC purports to bring a claim for unjust enrichment, which is premised on money "collected from Plaintiffs . . . pursuant to unlawful and/or unconscionable provisions in applicable contracts." App. 196 ¶ 411. Again, the SAC fails to identify these contracts. Count eight of the SAC purports to bring a claim for "intentional tort," but the SAC does not identify what intentional tort Appellees allegedly committed. Count nine of the SAC purports to bring a claim for "tort," which appears to sound in negligence. However, the SAC does not allege that Appellees owed students a duty of care or articulate the precise scope of any duty of care. *See Michelman v. Ehrlich*, 709 A.2d 281, 286 (N.J. Super. Ct. App. Div. 1998) ("[I]t is

15

simply not enough to ground liability in the fact that the defendant did not act with reasonable care and that his carelessness caused injury. . . . Rather, to establish liability, the plaintiff must demonstrate that the defendant owes him a duty of care." (internal quotation marks and alterations omitted) (quoting *Taylor by Taylor v. Cutler*, 703 A.2d 294, 297 (N.J. Super. Ct. App. Div. 1997))). Therefore, the District Court correctly concluded that counts six to nine of the SAC were not properly pled.

The District Court concluded that Appellees' motion to dismiss papers put Whatley on notice of the deficiencies in the FAC and she nonetheless failed to cure them in the SAC. After reviewing Appellees' motion to dismiss papers and the two complaints, we agree with the District Court. "[A] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Schumann*, 769 F.3d at 849 (internal quotation marks omitted) (quoting *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002)). The District Court did not err in denying Whatley's motion for leave to amend the FAC.

## IV.    Conclusion

For the foregoing reasons, we will affirm the District Court's judgments.

16