**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2095
_____

SHAWN LOGAN,
                    Appellant

v.

THE BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF PITTSBURGH;
CITY OF PITTSBURGH PUBLIC SCHOOL DISTRICT;
DALE FREDERICK; RONALD ZANGARO; ROBERT LELLOCK
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-15-cv-00499)
District Judge: Hon. Joy Flowers Conti
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 9, 2018
_____

Before: SHWARTZ, NYGAARD, and RENDELL, <u>Circuit Judges</u>.

(Filed: August 6, 2018)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Plaintiff Shawn Logan appeals the District Court's order denying his motion for leave to file a third amended complaint against the Board of Education of the School District of Pittsburgh and the City of Pittsburgh Public School District (together, the "School District"). Because the District Court properly denied leave to amend, we will affirm.

I[1]

Logan alleges Defendant Robert Lellock, a former police officer of the Pittsburgh School District, sexually abused him on at least 25 occasions. He alleges that during the 1998-1999 school year, when Logan was in sixth grade at Arthur J. Rooney Middle School, Lellock removed Logan from class and sexually abused him in a janitor's room at the middle school. Logan also alleges Lellock abused approximately 20 other students in similar ways. In July 2013, Lellock was convicted of sexual-assault-related crimes in Pennsylvania state court and sentenced to 32 to 64 years' imprisonment.

In 2015, Logan filed suit in the United States District Court for the Western District of Pennsylvania against Lellock and the School District.[2] The District Court

_____

[1] We draw the factual background largely from the allegations contained in Logan's third amended complaint (the "TAC"), which we accept as true. See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 166 (3d Cir. 2016). We also consider exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon such documents. Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016); see also infra Section II.A.

[2] Logan also sued Ronald Zangaro, the former principal of Rooney Middle School, and Dale Frederick, the Superintendent of Pittsburgh Public Schools. Logan did not

granted the School District's motion to dismiss Logan's amended complaint, and second amended complaint, and granted summary judgment against Lellock on Logan's Fourteenth Amendment substantive due process claim.

At issue here is Logan's motion for leave to file a third amended complaint (the "TAC") and his claims against the School District pursuant to 42 U.S.C. § 1983. He asserts, among other things, the School District failed to implement appropriate policies and training to protect students from sexual abuse, and, given the known risks of sexual assault in schools, a properly-trained administration and faculty would have investigated and stopped Lellock's practice of removing students from class. Logan relies in particular on a May 28, 1999 incident where the middle school's principal caught Lellock getting up from the floor with a student in a locked storage room. Lellock said he took the student there to "wrestle with him." App. 1326. Lellock was not terminated for this conduct, but he was suspended with pay and the incident was reported to Pittsburgh Police. The TAC also incorporates the deposition testimony of the former Chief of Police of Pittsburgh Public Schools, Robert Fadzen, who described several incidents allegedly showing the School District's failure to protect students from sexual abuse, including a prior incident in which Lellock had handcuffed an eight-year-old boy to a chair and sat on his lap for sexual purposes; an incident involving a school principal, in a dumpster on school property, observing students with binoculars while masturbating; a principal's interference with the arrest of a student who had sexually abused a five-year-

name these two individuals as defendants in his second amended complaint or proposed TAC.

3

old girl; a principal directing a cleaning crew to sanitize the area where a female student was raped by a male student; and instances where Fadzen was criticized and/or investigated for raising certain matters, including a sex offender's one-time access to a preschool and how a rape investigation was being handled. Based on these incidents, Logan alleges his TAC demonstrates that the School District was aware of sexual misconduct by School District employees or on School District property and Lellock's abuse but failed to take appropriate action.

The TAC states it attached two exhibits: Fadzen's deposition transcript and an expert report opining that the School District did not provide a safe learning environment and did not implement appropriate polices, or properly train teachers, regarding sexual abuse of students by school personnel. He attached many other documents to his motion for leave to file the TAC. In addition to the expert report and Fadzen's deposition transcript, Logan attached the transcripts of depositions of School District faculty and administrators, School District documents concerning sexual harassment from 1992, 1995, 2000, and 2001, and newspaper articles regarding sexual abuse in public schools or by public school officials.

The District Court denied Logan's motion for leave to file the TAC, holding that amendment would be futile. Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh, Civ. No. 15-499, 2017 WL 1001602 (W.D. Pa. Mar. 15, 2017). It concluded Logan failed to sufficiently allege the School District was deliberately indifferent in training staff on the proper removal of students from classrooms, noting there were no facts from which the Court could reasonably infer that the School District knew that the sexual abuse of a child

4

by a school police officer was a highly predictable consequence of not properly training staff, and no "obvious risks . . . were brought to the [School District's] attention prior to the May 28, 1999 incident." Id. at *8. As to the incident Fadzen described in which Lellock was found sitting on a handcuffed student, the Court recognized that a failure-to-train claim may be stated based on a single instance, as in L.R. v. School District of Philadelphia, 836 F.3d 235 (3d Cir. 2016), but reasoned that L.R. was different because the school policies at issue there—where a teacher released a kindergartner from the classroom to a stranger who abducted and sexually abused the child—involved the abduction risk to young children caused by strangers, in contrast to policies regarding school police officers' removal of students from class. Logan, 2017 WL 1001602, at *9. Finally, the District Court concluded Logan failed to sufficiently allege the School District was deliberately indifferent in not training teachers to detect and report signs of sexual abuse. Id. at *10. With respect to the expert's findings and Logan's allegations, the Court observed that together they "may be sufficient to infer that the [School District] w[as] negligent, but they are not sufficient for the court to reasonably infer that the [School District] knew that the risk of students being sexually abused by District police officers, such as Lellock, was likely or obvious." Id.[3]

---

[3] The District Court concluded that documents, other than Fadzen's deposition testimony, the expert report, and a "purported District school visitor policy" attached to Logan's motion, could not be considered because they were not public records or were not attached to or described in the complaint, and that many of Fadzen's allegations could not be considered because the Court could not infer they occurred prior to May 28, 1999 or put the School District on notice of Lellock's abusive conduct. Logan, 2017 WL 1001602, at *4.

5

Logan appeals.

## II[4]

### A

We review the denial of a motion for leave to file an amended complaint for abuse of discretion, but we exercise plenary review over the District Court's ruling that amendment would be futile. Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp., 823 F.3d 184, 189 (3d Cir. 2016). To determine futility, we use the "same standard of legal sufficiency" as we would apply to a motion to dismiss under Rule 12(b)(6). Id. (citation omitted). That standard of legal sufficiency requires us to decide whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). A claim is plausible when the pleaded facts allow us "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

In determining the sufficiency of a complaint, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon the documents." Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016) (alteration and citation omitted). Public records include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, judicial opinions, and hearing transcripts. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1197 (3d Cir. 1993). Under the Rule 12(b)(6) standard, courts also may consider deposition testimony, but only for the existence of the testimony—not for the truth of the facts asserted therein. See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. at 223-24, as recognized in In re Lipitor Antitrust Litig., 868 F.3d 231, 249 (3d Cir. 2017).

B

Logan argues the District Court erred in refusing to consider the "range of evidence that was detailed in the . . . Complaint, and was attached to the . . . Motion papers," and in declining to draw inferences in his favor. Appellant's Br. at 27. Relying primarily on Fadzen's testimony, Logan asserts he provided sufficient factual allegations that the School District was on notice of the dangers posed by removing students from classrooms but failed to train staff to prevent these risks; the District Court erred in declining to infer that specific events put the School District on notice of Lellock's sexual misconduct; and the Court erred in refusing to consider evidence post-dating Lellock's

7

abuse of Logan showing the School District's efforts to conceal Lellock's abuse of Logan and others.

1

We first consider whether the District Court properly limited itself to considering the allegations in the TAC, Fadzen's deposition testimony, and the expert report, and conclude that it did.

The District Court correctly declined to consider documents attached only to Logan's motion for leave to file the TAC because they were not attached to the complaint, not matters of public record, or not undisputedly authentic documents upon which Logan's claims are based. See Sands, 502 F.3d at 268; White Consol. Indus., 998 F.2d at 1197. Although we generally would not consider a deposition transcript attached to a complaint for the truth of the matters asserted therein, see Lum, 361 F.3d at 221 n.3, the District Court considered, without objection, both Fadzen's deposition and the expert's report in deciding whether the proposed TAC was futile. While this may have been incorrect, it is harmless, because even if the contents of the deposition transcript were embodied verbatim in the TAC, they would not set forth a claim for relief against the School District under § 1983 for failing to train its employees.

2

The School District is akin to a municipality for the purposes of § 1983. "[A] municipality may be liable [under § 1983] for the failure to train its employees only where that failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the [employees] come in contact.'" Doe v. Luzerne County, 660

8

F.3d 169, 179 (3d Cir. 2011) (third alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). For a municipality's alleged failure to train to amount to a deliberate choice, the plaintiff must show "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. at 180 (quoting Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)). A pattern of like constitutional violations is usually necessary to show deliberate indifference, but single-incident liability can attach "when the need for training 'can be said to be so obvious.'" Thomas v. Cumberland County, 749 F.3d 217, 223 (3d Cir. 2014) (quoting City of Canton, 489 U.S. at 390 n.10).

In addition, for a local government to be liable in this situation, "the identified deficiency in a . . . training program must be closely related to the ultimate injury," which means the plaintiff must "prove that the deficiency in training actually caused [the constitutional violation at issue]." Doe, 660 F.3d at 180 (quoting City of Canton, 489 U.S. at 391) (alteration in original).

Logan argues, as Fadzen testified, that the School District had a policy that a school police officer could not remove a student from class unless the officer had a warrant, and could not do so to interview the student unless the principal, the student's parent(s), or someone from the School District attending as "loco parentis" was also present. Appellant's Br. at 36; App. 864. The facts Logan alleges, however, do not

9

demonstrate that, in failing to train staff on such a policy, the School District was deliberately indifferent to the risk of sexual assault.

Logan cites four instances of misconduct about which Fadzen testified and which we will treat as if set forth in the TAC, but none would have provided the School District notice that its employees would confront a situation involving a police officer removing students from their classrooms to assault them. First, the former school board president, Rob Suber, "leer[ed]" at girls at football and basketball games, which Fadzen complained about, and that Suber in 2001 pleaded guilty to rape of a seven-year-old girl. App. 818. Abhorrent, to be sure, but neither the TAC nor the documents attached thereto provides a timeframe for these events. Moreover, Suber's conviction post-dates the misconduct at issue here, and in any event, Suber's actions differ from the risk that a police officer removing children from their classrooms would assault them. Second, Fadzen at one point caught a school principal, Bernie Komoroski, masturbating in a dumpster at night while looking at children through binoculars. This inappropriate behavior does not, however, present the risk of harm at issue here, and while Fadzen did not provide a date for this activity, it also appears to have occurred after Lellock abused Logan and other students and thus could not give the School District notice of the kind of risk Lellock presented. Third, Logan cites Fadzen's testimony that he heard from a guard at a different school, CAPA, "within the last . . . four years," that "there's a guy in the school, he's taking kids in weird areas of the school. Plus, Lellock is taking them into the closet up on the second floor [of the CAPA school]." App. 842. Because it is unclear when this troubling misconduct occurred, it does not provide a basis to infer that the School District

10

was on notice prior to May 28, 1999 of Lellock's actions or the risk to students being taken from class. Fourth, Fadzen testified that he heard from an elementary school staff member that Lellock handcuffed an eight-year-old boy to a chair and sat on him, for sexual gratification. Fadzen stated he thought this happened before Lellock abused Logan and others students in 1998-1999. Even if we assume these disturbing acts occurred before the 1998-1999 school year, they still do not show the School District was aware or should have suspected Lellock was removing students from class to abuse them, and thus does not show the School District was deliberately indifferent to a risk to their safety.[5]

Logan also asserts the District Court erred in not accounting for relevant conduct that occurred after Lellock's abuse during the 1998-1999 school year, such as cover-ups and insufficient investigations. We have considered Logan's allegations and have drawn all reasonable inferences in his favor, but these events simply do not demonstrate deliberate indifference on the School District's part because events that post-date 1998-1999 do not show what School District employees should have expected to occur in 1998-1999.

Finally, as to the May 28, 1999 incident when the principal found Lellock "wrestling" with a student in a closet, there can be no question that the School District

---

[5] The case of <u>Board of Public Education of School District of Pittsburgh v. National Union Fire Insurance Co. of Pittsburgh</u>, 790 A.2d 910 (Pa. Super. Ct. Pa. 1998), on which Logan relies, also does not help him because while that case concerned insurance coverage for the sexual assault by the president of the parent-teacher organization of a student, it did not concern removal from class and the risk of assault by school police.

was put on notice of Lellock's misconduct from this point on. Because of this incident, Lellock was suspended with pay, and the matter was reported to the Pittsburgh Police. Even assuming this could show deliberate indifference toward students' safety from sexual abuse, the School District's alleged failings after May 28, 1999 did not "actually cause[ ]" the abuse Logan suffered, Thomas, 749 F.3d at 222, because Lellock abused him during the 1998-1999 school year and thus before the events of May 28, 1999.[6]

## III

For the foregoing reasons, we will affirm.

---

[6] L.R. also does not assist Logan. L.R. involved a kindergarten teacher releasing a student from class to a stranger, who subsequently abducted and sexually abused the child. 836 F.3d at 239-40, 243-44, 246. The risk of harm in releasing a five-year-old in those circumstances was "so obvious" that it rose to the level of deliberate indifference, id. at 246—in other words, it was a situation in which single-instance liability could attach, see Thomas, 749 F.3d at 223. Lellock's May 28, 1999 misconduct is indefensible, but a police officer who is permitted on school property and removes students from class does not present a situation in which it is obvious that bad things would follow. Thus, those events do not show a deliberate indifference toward Logan or similarly-situated students, or causation.