NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1844
_____

LABORERS LOCAL NO. 231 PENSION FUND,
Individually and on Behalf of All Others Similarly Situated,

Appellant

v.

RORY J. COWAN; EDWARD A. BLECHSCHMIDT; MICHAEL G. DALLAS;
GUY L. DE CHAZAL; SUSAN JANE KANTOR; PAUL A. KAVANAUGH;
JACK NOONAN; JAMES A. QUELLA; CLAUDE P. SHEER;
H.I.G. CAPITAL, LLC; LBT ACQUISITION, INC.; LBT MERGER SUB, INC.;
LIONBRIDGE TECHNOLOGIES, INC.; MARC LITZ
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 1-17-cv-00478)
District Judge:  Honorable Colm F. Connolly
_____

Argued November 9, 2020

BEFORE: HARDIMAN, GREENBERG, and SCIRICA, <u>Circuit</u> <u>Judges</u>.

(Filed: December 2, 2020)
_____

Peter B. Andrews
David M. Sborz
Craig J. Springer
Andrews & Springer
3801 Kennett Pike
Building C, Suite 305

Greenville, DE 19807

Randall Baron        [Argued]
Joseph D. Daley
David T. Wissbroecker
Robbins Geller Rudman & Dowd
655 West Broadway
Suite 1900
San Diego, CA 92101

Christopher H. Lyons
Robbins Geller Rudman & Dowd
414 Union Street
Suite 900
Nashville, TN 37219

    *Counsel for Appellant Laborers Local*
    *No. 231 Pension Fund*

Deborah S. Birnback
Jennifer B. Luz
Goodwin Procter
100 Northern Avenue
Boston, MA 02210

David John Teklits
Morris Nichols Arsht & Tunnell
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899

    *Attorneys for Appellee Rory J. Cowan*

Anne S. Gaza
Elena C. Norman
Robert M. Vrana
Young Conaway Stargatt & Taylor
1000 North King Street
Rodney Square
Wilmington, DE 19801

    *Attorneys for Appellee LBT Merger Sub. Inc.*

Adam T. Humann
Kevin R. Powell, II
Kirkland & Ellis
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

Joshua Z. Rabinovitz [Argued]
Kirkland & Ellis
300 North LaSalle Street
Suite 2400
Chicago, IL 60654

*Attorneys for Appellees HIG Capital, L.L.C. and Lionbridge Technologies, Inc.*

_____

OPINION[*]

_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

I.      INTRODUCTION

This matter comes on before this Court on appeal of the lead Plaintiff-Appellant Laborers' Local #231 Pension Fund, on behalf of itself and others similarly situated (hereinafter, "Plaintiff").  Plaintiff appeals from the District Court's February 7, 2020 Order denying it leave to amend its Second Amended Complaint and the District Court's March 19, 2020 Order granting summary judgment in favor of Defendants-Appellees Rory J. Cowan, et al. ("Defendants").  For the reasons that follow, we will affirm both orders.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## II. STATEMENT OF FACTS

This is a securities class action lawsuit relating to allegedly misleading statements arising out of the sale of an entity named Lionbridge Technologies to H.I.G. Capital ("HIG").[1] The lead plaintiff in this matter is a former shareholder of Lionbridge, which brought this suit on behalf of itself and all former Lionbridge shareholders. Defendant Cowan was the chief executive officer of Lionbridge. The remaining defendants are other individuals and entities involved with the Lionbridge sale.

In December 2016, Lionbridge's Board of Directors (the "Board") approved a merger agreement for HIG's acquisition of Lionbridge, which was contingent on Lionbridge shareholder approval. On January 31, 2017, Lionbridge issued a proxy statement (the "Proxy"), by which the Board unanimously recommended that its shareholders vote their shares in support of the buyout.

The Proxy included a list of reasons explaining why the Board approved the proposed sale. One of those reasons was that Lionbridge's financial advisor, Union Square Advisors ("Union Square"), opined that a sale price of $5.75 per Lionbridge share, a price greater than Lionbridge traded on the Nasdaq Exchange, was fair (the "Fairness Opinion"). Lionbridge included the full text of the Fairness Opinion in the Proxy and also included the analyses and assumptions on which Union Square relied in reaching its conclusion. The Proxy included a statement on behalf of the Board

---

[1] Specifically, Lionbridge merged into a wholly-owned subsidiary of HIG.

4

providing that it believed the Fairness Opinion was a "positive reason[]" to support the approval of the merger agreement. (A158-61.)

The Proxy also reported that in creating the Fairness Opinion, Union Square "used and relied upon certain financial projections provided by" Lionbridge (referred to hereinafter as the "Fairness Projections" or "Projections"). (A163.) Regarding the Fairness Projections, the Proxy included the following disclaimer:

> The [Projections] below [are] included solely to give the Lionbridge stockholders access to certain financial projections that were made available to the Special committee, our Board of Directors and Union Square, and is not included in this proxy statement to influence a Lionbridge stockholder's decision whether to vote for the merger agreement or for any other purpose.

(A171.) It further warned that "Lionbridge stockholders are cautioned not to place undue, if any, reliance on the forecasts" and "the forecasts do not take into account any circumstances, transactions or events occurring after the dates on which the forecasts were prepared. Accordingly, actual results will differ, and may differ materially, from those contained in the forecasts." (A172.)

The Proxy also explained that on December 6, 2016—shortly before Union Square provided the Board the Fairness Opinion—senior management altered the Fairness Projections upon which Union Square relied. The passage disclosing those revisions provides in part:

> Our senior management had prepared a preliminary set of financial projections that it provided to our Board of Directors at the April 27 and April 28, 2016 Board of Directors meeting, which included full year forecasted results for 2016 and 2017, and which forecasts were not materially different

5

> than the December Projections, except that these forecasts were based on three months of actual results for 2016 resulting in 2016 Adjusted EBITDA figures approximately 17% higher than the December Projections summarized above, which included ten months of actual results for 2016.

(A171.) The Proxy made similar disclosures regarding revisions made to July, August, October, and November 2016 projections.

On February 28, 2017, over ninety percent of the Lionbridge shareholders voted to approve the company's sale to HIG at the $5.75 per share price. The sale closed shortly thereafter.

During this time, Lionbridge had engaged in a strategy to identify and pursue potential buyers of the company and used Union Square to assist it with identifying a potential buyer. Lionbridge also considered expanding through acquiring other companies. The Board formed an acquisitions committee to evaluate proposals and negotiate with interested parties.

In December 2016, the Board participated in a meeting concerning the financial impact of three of Lionbridge's pending acquisitions that the acquisitions committee approved. Three days after HIG acquired Lionbridge, Lionbridge announced that it acquired a company named ExeQuo.[2]

---

[2] The other two pending acquisitions fell through. Additionally, per Appellees, the ExeQuo acquisition was a $7 million purchase, which is "so small that it would not even have required Lionbridge to disclose the transaction in an SEC filing if Lionbridge were still a public company at the time the acquisition closed . . . ." Appellees' Br. at 14.

6

## III. PROCEDURAL HISTORY

Plaintiff initiated this action on April 27, 2017, and a year later Plaintiff filed a Second Amended Complaint. Plaintiff alleged that Defendants made several false and misleading statements in the Proxy. Defendants moved to dismiss the Second Amended Complaint, which the District Court granted in part and denied in part. Specifically, the Court dismissed the action to the extent that the Second Amended Complaint was based on five false statements in the Proxy, but the Court permitted one other false statement claim to proceed. On July 18, 2018, the Court denied Defendants' Motion for Reargument on its dismissal ruling.

Subsequently, Plaintiff moved for leave to file a Third Amended Complaint, which the Court denied as futile on February 7, 2020. On March 19, 2020, the Court granted summary judgment to Defendants. Plaintiff then filed this appeal in which it disputes the Court's February 7, 2020 Order denying leave to amend and the March 19, 2020 Order granting summary judgment in favor of Defendants.

## IV. ANALYSIS

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. §§ 1291, 1294. Plaintiff's claims arise under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (hereinafter, the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9(a).

A Section 14(a) claim[3] requires a plaintiff to show that: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 228 (3d Cir. 2007) (citation omitted). Only the first element is at issue on appeal, and, regarding that element, SEC Rule 14a-9 prohibits the making of a statement that "is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9.

## A.     The February 7, 2020 Order Denying Plaintiff's Motion to Amend

Plaintiff first disputes the District Court's order denying it leave to amend the Second Amended Complaint, in which it sought to "add allegations of a second material misrepresentation giving rise to additional liability under the same cause of action." (A102.) "[W]e review the District Court's denial of leave to amend for abuse of discretion, and review de novo its determination that amendment would be futile." United States ex rel. Schumann v. AstraZeneca Pharms. LP, 769 F.3d 837, 849 (3d Cir. 2014) (citation omitted).

---

[3] Section 20(a) of the Act provides for joint and severable liability of a controlled person and the controlling person for violations of the Act. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013). Because the District Court found that there had not been a Section 14(a) violation, it necessarily dismissed the Section 20(a) claim based on the underlying 14(a) claim. *See id.* ("Under the plain language of [§ 20(a)], plaintiffs must prove not only that one person controlled another person, but also that the 'controlled person' is liable under the [Exchange] Act." (citation omitted)).

Plaintiff avers that the Proxy's statement regarding the downward revisions made to the Fairness Projections was false and misleading because it caused shareholders to believe the buyout would be more attractive than it was. In OFI Asset Management v. Cooper Tire & Rubber, 834 F.3d 481 (3d Cir. 2016), we addressed facts similar to those in this matter. Specifically, we considered whether the district court erred when it dismissed the plaintiff's claims pertaining to statements regarding certain projections contained in the defendant's proxy statement. Id. at 500.

The OFI plaintiff argued that the proxy statement's projections were "objectively false because they were materially greater than the projections used internally and presented to [another party] just weeks earlier." Id. We found, however, that the projections were "plainly not included as statements of fact," further stating that, "the only relevant statement of fact is that the projections, were, in fact, the projections that [a defendant] provided to [another party] and the financing bank during the negotiation of the deal." Id. at 501. We explained that the projections were "accompanied by a lengthy and specific disclaimer," explicitly providing that the projections were "outdated" and advising shareholders not to rely on them. Id. Ultimately, we determined that the plaintiff had not pled that the defendants had stated a false or misleading statement because it did not allege that the defendants provided a different set of projections. Id.

Here, just as in OFI, Plaintiff's allegations pertain specifically to the Fairness Projections, which the Proxy warned were: (1) "included solely to give the Lionbridge stockholders access to certain financial projections that were made available to the Special Committee, our Board of Directors and Union Square"; (2) were not included "to

9

influence a Lionbridge stockholder's decision whether to vote for the merger agreement or for any other purpose"; (3) "should not be regarded as an indication that Lionbridge and/or any of [its] affiliates, officers, directors, advisors or other representatives consider the forecasts to be predictive of actual future events"; and (4) shareholders should not "place undue, if any, reliance on the forecasts." (A171-72.) Additionally, like those in OFI, the Projections at issue were included in the Proxy not as an estimate of Lionbridge's future performance, but rather solely to provide shareholders with the same information that had been provided to the special committee, the Board, and Union Square. Plaintiff does not allege that the Projections were not provided to those entities; instead, it alleges that the Projections themselves, which were expressly disclaimed, were false and misleading. Our holding in OFI forecloses this conclusion, and Plaintiff's arguments to the contrary lack persuasion. See 834 F.3d at 500-01.

Neither are we persuaded by Plaintiff's contention that "this interpretation of OFI would massively expand the carefully crafted safe harbor for forward-looking statements" and "effectively insulate[] all statements relating to projections." (Appellant's Br. 40 (internal quotation marks omitted).) Our ruling does not eliminate a plaintiff's ability to bring a securities claim by alleging that certain projections themselves are false and misleading when those projections are included as an estimate of the company's future performance. But such a circumstance is distinct from the situation in this matter in which the Projections were expressly disclaimed as being disclosed solely for the reason that they were made available to individuals and entities other than the shareholders. Accordingly, we will affirm the District Court's order and hold that

10

Plaintiff's intended amendment was futile because even if allowed, it could not affect our result.

## B. The March 19, 2020 Order Granting Defendants' Motion for Summary Judgment

Plaintiff next takes issue with the District Court's order granting summary judgment in favor of Defendants. "[W]e employ a plenary standard in reviewing orders entered on motions for summary judgment, applying the same standard as the district court." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014) (citation omitted). "In considering an order entered on a motion for summary judgment, we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Id. (internal quotation marks and citation omitted).

In Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund, 575 U.S. 175 (2015), the Supreme Court held that an opinion statement may be materially misleading if it "omits material facts about the . . . inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself . . . ." Id. at 189. "[W]hether a statement is 'misleading' depends on the [objective] perspective of a reasonable investor." Id. at 186.

Here, the actionable representation at issue is the Proxy's statement that the Lionbridge Board considered Union Square's Fairness Opinion to be a "positive reason" to approve of the HIG buyout. Plaintiff avers that this statement is misleading because it "failed to disclose a material fact that undermined that opinion" in that the Projections on which Union Square relied did not include Lionbridge's growth through future

11

acquisitions.[4]  (Appellant's Br. 50.)  Defendants aver, and the District Court agreed, that the Proxy expressly provided that it did not take future acquisitions into account. Specifically, they aver that the following passage—which consists of two consecutive sentences—supports their assertion:

> [(1)]  The forecasts . . . reflect assumptions that are subject to change and are susceptible to multiple interpretations and periodic revisions based on actual results, revised prospects for our business, changes in general business or economic conditions, or any other transaction or event that has occurred or that may occur and that was not anticipated when the forecasts were prepared.
>
> [(2)] In addition, the forecasts do not take into account any circumstances, transactions or events occurring after the dates on which the forecasts were prepared.

(A172.)

Plaintiff argues that the first sentence "falsely implied to the reasonable investor that the Fairness Projections included at least 'anticipated' acquisitions," when in truth, those Projections "did not account for any future acquisitions by Lionbridge, even those that were specifically anticipated at the time."  (Appellant's Br. 51.)  Moreover, it argues that even assuming the first sentence is ambiguous as to whether a reasonable investor would believe it impliedly included anticipated acquisitions, such ambiguity must be resolved by a jury.

---

[4] The District Court found there was no dispute of material fact as to whether the Board itself believed that the Fairness Opinion was "a positive reason supporting [its] decision to recommend the merger notwithstanding the fact that the projections on which Union Square relied did not account for future acquisitions."  (A49-50.)  Plaintiff does not strongly dispute this finding on appeal.  (See, e.g., Appellant's Br. 58 n.11.)

We will affirm the District Court's order granting summary judgment in favor of Defendants. Here, the second sentence of the Proxy provides: "[T]he forecasts do not take into account <u>any</u> circumstances, transactions or events occurring after the dates on which the forecasts were prepared." (A172 (emphasis added).) Even if the first sentence creates any ambiguity as to whether future acquisitions were considered, the second sentence clarifies that the forecasts do not account for those future acquisitions. (<u>See</u> A53.) As the <u>Omnicare</u> Court recognized, a "reasonable investor understands a statement of opinion in its full context . . . ." 575 U.S. at 190, <u>see also</u> <u>id.</u> ("[A]n omission that renders misleading a statement of opinion when viewed in a vacuum may not do so once that statement is considered, as is appropriate, in a broader frame . . . ."). Here, Plaintiff's argument focuses on the first sentence and does not persuasively address how the second sentence expressly undermines its position. Thus, the passage is unambiguous.[5] Further,

---

[5] Nor do we find persuasive Plaintiff's arguments that the District Court's opinion on Defendants' Motion to Dismiss evidences the passage's ambiguity. Namely, that opinion, which was made by a judge who was later replaced, found that a reasonable investor may believe that the above-referenced first sentence implied that Lionbridge accounted for anticipated acquisitions in its Projections. That replaced judge, however, expressly acknowledged that it was a "close call" as to whether to allow Lionbridge to move forward with its claim and merely allowed the claim to proceed at the preliminary stage of the proceedings.

Moreover, the District Court did not, as Plaintiff avers, violate the law-of-the-case in deviating from that ruling. The law-of-the-case doctrine "does not limit the power of trial judges to reconsider their [own] prior decisions" and "does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court." <u>United States ex rel. Petratos v. Genentech, Inc.</u>, 855 F.3d 481, 493 (3d Cir. 2017). Further, "interlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case," <u>Id.</u> at 494 (citation omitted), and "[t]he denial of a motion to dismiss does not end the litigation and ordinarily is not a final order[,]" <u>Bell</u>

because we find that there is no ambiguity, Plaintiff's argument that the issue must be

presented to a jury fails.

Accordingly, we will affirm the February 7, 2020 and March 19, 2020 Orders.

---

Atlantic-Pennsylvania, Inc. v. Pennsylvania Public Utilities Commission, 273 F.3d 337, 343 (3d Cir. 2001).